Ramón Montaner, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* La Comisión Industrial de Puerto Rico, compuesta de los Hons. Manuel León Parra, Presidente, Francisco Paz Granela y Juan N. Herrero, Comisionados Asociados, recurrida; y Nicolás Monge, peticionario y apelante ante la Comisión.

Núm. 6.—*Sometido:* Noviembre 12, 1936. *Resuelto:* Noviembre 18, 1936.

*Hon. Procurador General B. Fernández García, E. de Aldrey, Subprocurador y Luis Negrón Fernández, Oficial Jurídico del Fondo del Estado,* abogados del recurrente; *M. León Parra,* abogado de la recurrida; *F. Rebollo López,* abogado del señor Monge.

El Juez Asociado Señor Travieso, emitió la opinión del tribunal.

El obrero Nicolás Monge trabajaba como mayordomo de ganado y celador de fincas con la Fajardo Sugar Growers' Association por un jornal de $12 semanales. Dentro de sus obligaciones estaban las de velar las propiedades, atender

el ganado, cuidar de que no se robasen las cosas de la finca, y desempeñar los deberes usuales de un celador de fincas.

En una de las fincas a su cargo había unas canteras, de las que estaba prohibido expresamente que se extrajese piedra, por haberlo ordenado así el patrono, siendo el celador Nicolás Monge el encargado de velar por el cumplimiento de dicha orden. En dichas canteras se introdujo durante la mañana del 29 de septiembre de 1935 Santiago Ruiz, a extraer piedras, tal y como lo había hecho en ocasiones anteriores, contra la voluntad del patrono de Monge. Cumplió éste su deber al lanzarle fuera de la propiedad, y molesto por ello, en la tarde del mismo día el tal Santiago Ruiz agredió a mansalva a Monge y le cercenó de un machetazo la mano derecha.

El Administrador del Fondo del Seguro del Estado entendió que la incapacidad sufrida por Monge no era compensable de acuerdo con el artículo 4, inciso 3, de la Ley núm. 45 de 18 de abril de 1935 (Leyes de 1935, pág. 251), *infra,* y ordenó el cierre y archivo del caso por disposición de 4 de junio de 1936. Por escrito de 11 de junio de 1936 solicitó Monge de la Comisión Industrial que entendiera del caso, y por resolución de 23 de octubre del mismo año, acordó ésta ordenar al administrador del Fondo del Estado que le pagase la indemnización a que por ley tenía derecho. Solicitada por la parte perjudicada la reconsideración de la anterior resolución, se declaró no haber lugar a ello por otra de fecha 2 de noviembre de 1936.

Se solicita ahora de esta Corte Suprema que revise los fundamentos de la resolución de la Comisión Industrial de fecha 2 de noviembre de 1936, confirmando la del 23 de octubre también del mismo año.

Alega el recurrente en su solicitud de revisión que la resolución recurrida "es errónea, contraria a derecho, nula y sin efecto legal alguno por los siguientes motivos:

"(*a*) Porque la Comisión Industrial de P. R. cometió error al resolver que los apartados 1, 2, 3 y 4 del artículo 4 de la Ley de

Compensaciones por Accidentes del Trabajo, aprobada el 18 de abril de 1935, no constïtuyen excepciones a las disposiciones del artículo 2 de la misma ley.

"(b) Porque los casos de accidentes ocurridos bajo las condiciones enumeradas en los apartados 1, 2, 3 y 4 del artículo 4 de la ley supra son restricciones y excepciones que impiden el otorgamiento de una compensación en aquellos casos en que, de no existir las circunstancias en dichas excepciones especificadas, un obrero o empleado obtendría los beneficios de dicha ley.

"(c) Porque aun aceptando que el accidente sufrido por Nicolás Monge ocurriera en el curso y como consecuencia del trabajo, el mismo está excluído expresamente de los beneficios de la ley supra, por el apartado 3 del artículo 4 de la misma, toda vez que las excepciones contenidas en dicho artículo no pueden ser aplicadas a otros accidentes que no sean aquéllos ocurridos en el curso y como consecuencia del trabajo."

Los discutiremos conjuntamente, por ser todos los alegados motivos análogos entre sí.

 El artículo 2 de la Ley de Compensaciones por Accidentes del Trabajo (Ley núm. 45 de abril 18, 1935, Leyes de 1935, pág. 251), invocado, dispone en lo pertinente:

"Artículo 2.—Las disposiciones de esta Ley serán aplicables a todos los obreros y empleados que trabajen para los patronos a quienes se refiere el párrafo siguiente, que sufran lesiones o se inutilicen, o que pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muerte derivadas de la ocupación, según se especifican en el artículo siguiente. Se exceptúan expresamente aquellos obreros y empleados dedicados al servicio doméstico y aquéllos cuya labor sea de carácter accidental o casual y no esté comprendida dentro del negocio, industria, profesión u ocupación de su patrono y además aquellas personas que trabajen en sus domicilios."

El otro artículo invocado es el núm. 4 de la misma ley, que textualmente transcrito, dice:

"Artículo 4.—No son accidentes compensables del trabajo y no darán por consiguiente, derecho a compensación al obrero, empleado

o a sus beneficiarios de acuerdo con esta Ley, los que ocurren en las siguientes circunstancias:

"1. . . . . . . . . .

"2. . . . . . . . . .

"3. Cuando la lesión le haya sido causada al obrero o empleado por el acto criminal de una tercera persona.

"4. . . . . . . . . ."

El inciso tercero del artículo últimamente transcrito no comprende o incluye aquellos casos en que el obrero se incapacita, lesiona o muere en el desempeño de un trabajo o empleo cuya característica distintiva es la de exponer al que lo realiza a la posibilidad y probalidad de ser lesionado por el acto criminal de un tercero. Los serenos, guardianes y oficiales de orden público, entre otros, están expuestos principalmente, en el ejercicio de sus deberes como tales, al único riesgo que el administrador del Fondo del Estado quiere excluir de entre los compensables, esto es, al riesgo de lesión, causada por el acto criminal de una tercera persona. Y si el recurrente puede legalmente cobrar una prima por asegurar al trabajador contra esa clase de riesgo, no puede legalmente insistir en el momento de pagar en que la incapacidad derivada de ese riesgo no es compensable.

El artículo 2 de la ley se refiere, como hemos visto, a "accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste y como consecuencia del mismo." El acto de echar fuera de la finca a Santiago Ruiz, que en aquellos momentos era un intruso, era un "acto o función inherente" al trabajo o empleo que desempeñaba Monge; y el accidente en que éste perdió su mano ocurrió en el curso de ese empleo y como consecuencia del mismo. No creemos que la intención del legislador haya sido la de excluir de los beneficios de la ley a aquellos obreros, que estando encargados de impedir la realización de actos criminales contra la propiedad del patrono, sean lesionados o pierdan la vida como consecuencia del cumplimiento de esos deberes.

La excepción que establece el apartado 3ro. del Artículo 4, supra, se refiere a las lesiones recibidas por el acto criminal de un tercero, en un trabajo o empleo en que tal riesgo no es la natural y probable consecuencia, o en uno en que ese riesgo no sea una característica inherente del mismo. *In re Heitz*, 112 N. E. 750.

En *Polar Ice & Fuel Co.* v. *Mulray,* 119 N. E. 149, se trataba de un empleado llamado Mulray, a quien sus subalternos tenían que rendirle cuentas de la cantidad de hielo que se les entregaba y que ellos vendían. Uno de ellos fué reprendido y mató a Murlay. La única cuestión que se planteó fué la de si la muerte ocurrió como consecuencia del empleo de éste. La Corte Suprema de Indiana dijo:

"Está firmemente establecida la regla al efecto de que no se negará compensación simplemente porque el accidente ocurriera debido a la intervención ilegal y torticera de una tercera persona, si el empleado fué lesionado estando especial y peculiarmente expuesto al riesgo que le sobrevino, debido al carácter y naturaleza de su empleo. En otras palabras, cuando la lesión proviene de las circunstancias que rodean al empleado, al momento del accidente, dentro de las cuales debe desenvolverse en el ejercicio de sus deberes, hablando en términos generales, aquélla surge como consecuencia del empleo. *Union Sanitary Mfg. Co.* v. *Davies,* 115 N. E. 676."

La corte de Indiana distingue el caso de Davis que cita, por el hecho de haber sido el propio reclamante, en aquel caso, el que provocara la reyerta que ocasionara las lesiones que sufrió, y porque su empleo no le imponía la obligación de entenderse para nada con quien le agrediera.

En *In re Heitz,* supra, la Corte de Apelaciones del Estado de New York dijo:

"La ley (Compensación por Accidentes del Trabajo) fué aprobada para beneficio de aquellos trabajadores en empleos peligrosos, que se encontraban sin remedio legal. Dentro del derecho común o bajo la Ley sobre Responsabilidad de Patronos, la compensación se concede prescindiendo de la culpa del patrono. La ley ha sido y

debe ser interpretada justamente y hasta con liberalidad, en beneficio del obrero."

En el caso de *Nevich* v. *Delaware,* etc., 100 A. 234, la obligación del peticionario consistía en mantener un barril siempre lleno de agua, que después distribuía en cubos a otros operarios del demandado para mezclar cemento. Mientras se encontraba distribuyendo unos cubos, dos intrusos se llevaron el barril. El superior del peticionario le ordenó que lo recobrara, y al así hacerlo, recibió las lesiones por las que pidió compensación. La Corte de Apelaciones de New York se expresó así:

"Como hubo prueba tendiente a demostrar que el superior del peticionario le ordenó recobrar el barril de quienes se lo llevaban, no puede haber duda de que el accidente ocurrió en el ejercicio y como consecuencia de su empleo, ya que, siguiendo instruciones de su patrono, estaba recobrando de personas que trataban de sustraerlas sin derecho alguno, parte de las herramientas de aquél, que él usaba en el ejercicio de sus deberes, y habiéndole ordenado el demandado recobrar el barril, a sabiendas de las condiciones prevalecientes, *siendo una de ellas la de que opusieran resistencia,* somos de opinión de que el accidente ocurrió como consecuencia de su empleo, así como en el ejercicio del mismo, y, por lo tanto, la sentencia de la Corte Suprema sobre este aspecto del caso debe ser confirmada." (Bartadillas nuestras.)

En una nota a la página 498 (499) de L. R. A. 1918E se afirma:

"Aunque ha habido algún desacuerdo en cuanto a si las lesiones causadas por el acto deliberado y malicioso de una tercera persona pueden considerarse como accidentales, las cortes todas están hoy contestes en que el empleado que sufre una incapacidad no será privado de compensación simplemente porque tal incapacidad fuera el resultado del acto deliberado y malicioso de una tercera persona y no el resultado de causas inanimadas."

Más adelante dice la misma nota:

"Cuando, sin embargo, el acometimiento es tal que probablemente ocurriría debido a la naturaleza del trabajo que se realiza por el

634

empleado, se ha resuelto que proviene como consecuencia del empleo y en el curso del mismo.''

Para otros casos sobre el particular, consúltense los siguientes: *Ohio Bldg. Safety Vault Co.* v. *Industrial Board,.* (1917) 277 Ill. 96, 115 N. E. 149, 14 N. C. C. A. 224; *Chicago Dry Klin Co.* v. *Industrial Board,* (1916) 276 Ill. 556, 114 N. E. 1009, Ann. Cas. 1918B, 645; *Hellman* v. *Manning Sand Paper Co.* (1916) 176 App. Div. 127, 162 N. Y. Supp. 335; *Spang* v. *Broadway Brewing & Malting Co.* (1918) 182 App. Div. 443, 169 N. Y. Supp. 574; *Stertz* v. *Industrial Ins. Commission* (1916) 91 Wash. 588, 158 Pac. 256; *San Bernardino County* v. *Industrial Acc. Commission* (1917) 35 Cal. App. 33, 169 Pac. 255.

*Por las razones apuntadas, creemos que debe declararse sin lugar la presente solicitud de revisión, y confirmarse en todas sus partes la resolución de la Comisión Industrial.*

El Juez Presidente Señor del Toro no intervino.