GUILLERMO ATILES MORÉU, en su carácter de ADMINISTRADOR DEL FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* LA COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; SUCESIÓN DE JOSÉ ÁLVAREZ DE JESÚS, recurridos.

Núm. 445.—*Sometido:* Diciembre 3, 1951. *Resuelto:* Enero 16, 1952.

16

*A. de Jesús Matos* y *Donald R. Dexter*, abogados del recurrente;
*Manuel Maldonado Pacheco,* abogado de la Sucesión recurrida.

EL JUEZ PRESIDENTE SEÑOR TODD, JR., emitió la opinión del tribunal.

La Comisión Industrial de Puerto Rico revocó una decisión del Administrador del Fondo del Seguro del Estado y le ordenó que extendiera a los beneficiarios del obrero fallecido José Álvarez de Jesús la compensación correspondiente de acuerdo con la ley. Solicitada la reconsideración y denegada que fué, a petición del Administrador expedimos el auto en este caso para revisar las actuaciones de la Comisión.

No existe controversia en cuanto a los hechos probados en el caso, los cuales la Comisión expuso en esta forma:

"De la prueba testifical tanto de una como de otra parte se desprende que José Álvarez de Jesús, allá para el día 30 de octubre de 1950, trabajaba en la Puerto Rico Tobacco Marketing Coop. Association, como pesador de tabaco; que ese día se llevaba a cabo, en el almacén del patrono, una transacción de compraventa de tabaco entre el patrono y Ruppin Corporation; que con tal motivo, y con el propósito de terminar lo antes posible con los detalles relacionados con dicha venta, y a fin de que el comprador pudiera terminar temprano su misión, se le hizo una encomienda especial al obrero José Álvarez de Jesús consistente ésta en que se fuera a almorzar a las 11:15 de la mañana, en vez de a las 11:30 que era la hora de salida, y que regresara antes de las 12:30, que era la hora de volver al trabajo; que el obrero, en cumplimiento de esas instrucciones, salió temprano a almorzar a su casa; que cuando venía de regreso, como a eso de las 12:10 de la tarde, se formó un tiroteo frente al almacén de la P. R. Tobacco Marketing Coop. Association entre nacionalistas, guardias nacionales y miembros de la policía insular; que como resultado de ese tiroteo, una bala perdida hirió al obrero José Álvarez de Jesús en momentos en que éste se encontraba en la acera, próximo al almacén y muy cercano a la puerta de entrada; que al entrar al almacén se quejó al señor Salvador Barea de que estaba herido y que entonces se tomaron las medidas necesarias para trasladarlo a la clínica.

"En cuanto a la encomienda especial que se le hiciera ese día al obrero, la prueba fué terminante, ya que no hubo ni si-

quiera un asomo de discrepancia entre los testigos de una y otra parte. No hubo tampoco discrepancia alguna en cuanto a que la bala hirió al obrero mientras éste se encontraba en la acera, próximo a entrar al almacén."

Al declarar compensable el accidente la Comisión lo hizo a virtud de las siguientes conclusiones:

"(1) Que el accidente, a no dudar, ocurrió, y ocurrió en la acera del establecimiento del patrono, próximo a la puerta de entrada;

"(2) Que el obrero desempeñaba en esos momentos una encomienda especial que se le había hecho; y

"(3) Que de acuerdo con la prueba practicada y con la jurisprudencia establecida por nuestro Tribunal Supremo, tenemos irremisiblemente que llegar a la conclusión de que el sitio de la ocurrencia del accidente, por estar tan próximo, tan pegado a la propiedad del patrono, podría considerarse, de hecho, como que formaba y forma parte de los predios del patrono y por consecuencia, el accidente cae de lleno dentro de la esfera de la compensabilidad."

No obstante que durante la vista celebrada el Comisionado que la presidía hizo referencia al artículo 4, inciso 3, de la Ley de Compensaciones por Accidentes del Trabajo (Ley núm. 45 de 1935, pág. 251), (¹) la Comisión al resolver el caso no hizo pronunciamiento alguno con referencia al mismo y entonces el Administrador, al solicitar la reconsideración, entre otros motivos expuso el siguiente:

"(b) Que al dictar dicha resolución la Comisión Industrial ignoró el hecho de que de la prueba aparece que la muerte en este caso se debió al acto criminal de una tercera persona, por tanto el caso no es compensable. (Artículo 4, inciso 3 de la Ley de Compensaciones por Accidentes del Trabajo.)"

Resolviendo esta cuestión, la Comisión se limitó a decir que el "caso cae más bien dentro de la teoría generalmente

---

(¹) El artículo 4, inciso 3, dispone:

"Artículo 4.—No son accidentes compensables del trabajo y no darán por consiguiente, derecho a compensación al obrero, empleado o a sus beneficiarios de acuerdo con esta Ley, los que ocurren en las siguientes circunstancias:... 3. Cuando la lesión le haya sido causada al obrero o empleado por el acto criminal de una tercera persona."

conocida con el nombre de 'riesgos de la calle', que dentro de la teoría del acto criminal de una tercera persona. Nos basamos al hacer esta aseveración en el hecho de que los tiroteos (*shootings*) que a veces ocasionan desgracias, y que dan margen a reclamaciones por alegados accidentes del trabajo, siempre se discuten en las obras de jurisprudencia y obras sobre compensaciones por accidentes del trabajo bajo el título de 'riesgos de la calle', y bajo esa teoría es que hemos considerado este caso...."

■■ En el caso de *Montaner, Admor., etc.* v. *Comisión Industrial*, 50 D.P.R. 628, en el cual el obrero lesionado era un celador de las fincas del patrono y tenía entre otras obligaciones la de impedir que se robasen piedra de una cantera y al hacerlo fué atacado por uno que estaba sustrayendo dicha piedra sufriendo la mutilación de una mano, resolvimos que el inciso tercero del artículo 4, supra, no comprende o incluye aquellos casos en que el obrero se incapacita, lesiona o muere en el desempeño de un trabajo o empleo cuya característica distintiva es la de exponer al que lo realiza a la posibilidad y probabilidad de ser lesionado por el acto criminal de un tercero, y citamos como ejemplo a los serenos, guardianes y oficiales del orden público que están expuestos en el ejercicio de sus deberes como tales al riesgo de sufrir lesiones como consecuencia del acto criminal de un tercero. Empero, también resolvimos en dicho caso que "La excepción que establece el apartado 3ro. del artículo 4, supra, se refiere a las lesiones recibidas por el acto criminal de un tercero, *en un trabajo o empleo en que tal riesgo no es la natural y probable consecuencia, o en uno en que ese riesgo no sea una característica inherente del mismo.*" (Bastardillas nuestras.)

Posteriormente, en el caso de *Caraballo* v. *Fondo del Estado*, 53 D.P.R. 193, distinguimos el de *Montaner*, supra, y aplicando el inciso 3 del artículo 4, supra, resolvimos, copiando del Sumario, que "No teniendo el trabajo de cortar cañas como característica distintiva la de exponer al que lo realiza a la posibilidad y probabilidad de ser lesionado por

un tercero, si con motivo de una cuestión personal provocada por un peón en dicho trabajo al vencer la resistencia de un aguador y herirlo con su machete, éste le asesta un machetazo y le hiere de gravedad, el accidente no es compensable bajo el inciso 3, artículo 4 de la Ley núm. 45 de 1935, pág. 251."

¿Puede sostenerse que las disposiciones del inciso 3 del artículo 4, supra, sean aplicables a los hechos probados en el presente caso? Creemos que no. Desde luego que el mismo no cae dentro de la excepción que, en la interpretación liberal le dimos a dicho inciso en el caso de *Montaner* v. *Comisión*, supra, ya que aquí el obrero no desempeñaba ningún cargo de guardia, sereno, capataz u otro similar y que en el cumplimiento de sus deberes ocurriera su muerte a manos de una tercera persona. Y tampoco hubo aquí cuestión personal alguna del obrero con un tercero que haga aplicable lo resuelto en el de *Caraballo*, supra.

Ahora bien, ¿qué demostró la prueba, según las conclusiones de la Comisión, en cuanto al "acto criminal de una tercera persona"? Sólo lo siguiente: que cuando el obrero venía de regreso al trabajo a las 12:10 de la tarde y encontrándose en la acera próxima al almacén y muy cercano a la puerta de entrada, "Se formó un tiroteo frente al almacén . . . entre nacionalistas, guardias nacionales y miembros de la policía insular; . . . como resultado de este tiroteo, una bala perdida hirió al obrero . . ."

Arguye el recurrente que por el hecho de haber ocurrido los sucesos nacionalistas el 30 de octubre de 1950—de los cuales tomamos conocimiento judicial en el caso de *Guadalupe* v. *Bravo, Alcaide Cárcel*, 71 D. P. R. 975—eso basta para concluir que la bala que hirió al obrero de Jesús fué consecuencia del acto criminal de una tercera persona. No estamos conformes. El hecho de que hayamos tomado conocimiento judicial de los sucesos nacionalistas a los efectos de determinar en un caso de hábeas corpus si existía causa probable para un arresto, no significa que hayamos en forma

alguna determinado que todas las consecuencias de dichos sucesos envuelvan actos criminales. Cada caso que surja como consecuencia de dichos sucesos será resuelto de acuerdo con los hechos que en el mismo se hayan probado. Y en el de autos no existe prueba alguna que tienda a demostrar que la bala que hirió al obrero fué disparada por una mano criminal pues bien pudo haberlo sido por un miembro de la Guardia Nacional, por un policía insular o por cualquier otra persona actuando en defensa propia, y en tal caso, no podríamos calificarlo de "acto criminal de una tercera persona."

El inciso 3 del artículo 4, supra, es peculiar de nuestro estatuto ya que, del examen que hemos hecho de las distintas leyes sobre compensaciones por accidentes del trabajo en los distintos estados de la Unión Americana, recopiladas en Schneider, *Workmen's Compensation Statutes*, ninguna contiene una disposición similar.(²)   Es por esta circunstancia que la jurisprudencia sobre casos de ataques al obrero por terceras personas se ha ido liberalizando cada día más reconociendo la compensabilidad de la lesión sufrida no sólo cuando el obrero ha sido una víctima inocente, sino aun cuando ha sido el agresor inicial y la prueba demuestra que su empleo, en alguna forma, lo expuso al riesgo de recibir la lesión.   *Assaults and Horseplay Under Workmen's Compensation Laws*, por Samuel B. Horovitz, 41 Ill. L. Rev. 311; *Modern Trends in Workmen's Compensation*, por el mismo autor, 21 Indiana L. J. 473; 6 Schneider's *Workmen's Compensation Law* 188; 4 NACCA Law Journal 47–54; 7 Id. Id. 58–60; 8 Id. Id. 58–60.

---

(²) Ellas sí contienen disposiciones similares a las de los incisos 1, 2 y 4 de nuestro artículo 4, en cuanto a que no son accidentes compensables los que ocurren:

"1. Al tratar el obrero o empleado de cometer un delito o de lesionar a su patrono o a cualquier otra persona, o cuando voluntariamente se causare la lesión.

"2. Estando el obrero o empleado embriagado, siempre que la embriaguez fuere la causa del accidente.

"  .    .    .    .    .    .    .    .    .    .

"4. Cuando la imprudencia temeraria del obrero o empleado haya sido la única causa de la lesión."

■■ Por otra parte, ¿qué alcance debe dársele a la frase "acto criminal de una tercera persona", independientemente del que ya le dimos en el caso de *Montaner* v. *Comisión*, supra, al efecto de que no es aplicable a un caso en el cual la característica distintiva del trabajo o empleo es la de exponer al que lo realiza al riesgo de ser lesionado por el acto criminal de un tercero? En el caso de *Caraballo* v. *Fondo del Estado*, supra, confirmamos a la Comisión Industrial al resolver que el accidente allí envuelto no era compensable por estar comprendido dentro de la excepción que establece el inciso 3 del artículo 4, supra. Empero, depués de un detenido estudio de la cuestión y de los hechos de dicho caso, estamos convencidos de que la conclusión a que en él se llegó es errónea. Los hechos demostraron que la lesión que recibió el obrero, cortador de cañas, le fué inferida por otro obrero, el encargado de servirle agua a todos los obreros mientras éstos trabajaban, y con motivo de una discusión que surgió entre ellos al negarse el aguador a darle agua a Caraballo.

Si bien el trabajo de cortar cañas no tiene como característica distintiva la de exponer al que lo realiza a la probabilidad de ser lesionado por un tercero—teoría del riesgo incidental del caso de *Montaner* v. *Comisión*, supra—creemos que los hechos antes relatados demuestran que la lesión que recibió Caraballo ocurrió en el curso y como consecuencia de su empleo y como resultado de una actuación inherente al mismo, ya que el acto de calmar la sed de un obrero mientras está en su trabajo es uno inherente al mismo. Al efecto se dijo en *Archibald* v. *Ott*, 87 S.E. 791, según lo citamos en el de *Cordero, Admor.* v. *Comisión Industrial*, 61 D.P.R. 361, 366:

"Tales actos necesarios para la vida, comodidad y conveniencia del obrero mientras está en el trabajo, aunque lo sean estrictamente personales, y no actos del servicio, son incidentales a su labor, y un daño sufrido al realizarlos se reputa que ha surgido como consecuencia del empleo. Un hombre debe respirar y tomar agua a ratos, mientras está en su trabajo. En

estos y otros momentos concebibles el obrero se atiende a sí mismo, pero en un sentido remoto estos actos contribuyen a la promoción del trabajo. *Vennen* v. *New Dells Lumber Co.* (Wis.), 154 N.W. 640; *Zabriskie* v. *Erie R. Co.,* 85 N.J. Law, 157, 88 Atl. 824. Que tales actos se realizarán en el curso del empleo tuvo necesariamente que tomarse en consideración, siendo incidentes inevitables. Esos riesgos concurrentes son, en consecuencia, riesgos incidentales. Al mismo tiempo daños ocasionados por ellos son accidentes que resultan del empleo."

Bajo la tendencia moderna liberalizadora en la concepción de lo que constituye un accidente del trabajo poco importa que una lesión sea consecuencia de una agresión entre dos obreros del mismo patrono si, al momento de ocurrir, ambos están realizando la labor que el patrono les ha encomendado y la agresión surge con motivo de dicha labor. Véanse los innumerables casos citados por Horovitz en los escolios 55–61, págs. 335–37, 41 Ill. L. Rev., supra, que demuestran que el peso de las autoridades hoy sostiene que las lesiones recibidas como consecuencia de una agresión son compensables cuando la agresión surge del trabajo o con motivo de éste. Es de especial mención el caso de *Hartford Accident & Indemnity Co.* v. *Cardillo,* 112 F. 2d 11 (C. A. D. C., 1940), por la luminosa opinión del Juez Asociado Sr. Rutledge sobre esta cuestión. El caso de *Caraballo* v. *Fondo del Estado,* supra, queda revocado.

La determinación de lo que constituye un "acto criminal", o sea, un delito, es una función judicial y corresponde a las cortes de justicia. Artículo 2 del Código de Enjuiciamiento Criminal. Esto no obstante la determinación de si un accidente del trabajo es compensable o no ha sido conferida por ley en primer término al Administrador del Fondo y después a la Comisión Industrial, y repetidas veces hemos resuelto que esta última es un cuerpo cuasi judicial con plena facultad para resolver todas las cuestiones de derecho y de hecho que sean llevadas ante ella—*Caraballo* v. *Comisión Industrial,* 51 D.P.R. 161, en el que resolvimos que la Comisión, no obstante lo dispuesto en el artículo 56 del Código Civil en cuanto a

cuándo procede declarar la presunción de muerte de una persona ausente, podía determinar dicha presunción por prueba circunstancial; *Montaner, Admor.* v. *Comisión Industrial,* 51 D.P.R. 460, sobre admisión de prueba ante la Comisión; *Montaner, Admor.* v. *Comisión Industrial,* 52 D.P.R. 924, en el cual resolvimos que es la Comisión y no los tribunales de justicia la que tiene jurisdicción para dirimir en primera instancia las contiendas entre el Administrador y los obreros lesionados; *Juan Bigas, Sucrs.* v. *Comisión Industrial,* 71 D.P.R. 336, reconociendo el poder de la Comisión, no obstante el artículo 8 de la Ley núm. 230 de 1942 que reglamenta el empleo de menores, para determinar la edad del obrero al sufrir el accidente.

En el caso de *Sucn. Rodríguez* v. *Comisión Industrial,* 53 D.P.R. 825, al sostener la constitucionalidad de la Ley núm. 45 de 1935 en cuanto concedía poderes cuasi judiciales a la Comisión, resolvimos que "tal circunstancia, por sí sola, no implica la anticonstitucionalidad de la Comisión porque si bien ello es así, la propia ley que la crea otorga un recurso para ante las cortes de justicia reservando a éstas de tal modo la última palabra en el ejercicio del poder."

En el caso de autos la Comisión resolvió que no se había cometido un acto criminal por una tercera persona porque los hechos más bien lo hacían caer dentro de la teoría generalmente conocida con el nombre de "riesgos de la calle". Aun cuando su razonamiento es erróneo, ya que dicha teoría sería aplicable si el trabajo del obrero hubiera requerido su presencia en la calle, consideramos que su conclusión es correcta por no haberse probado quién fué el que disparó la bala que hirió al obrero, pues la aplicación por la Comisión del inciso 3 del artículo 4 de la ley, supra, debe circunscribirse a aquellos casos en que la prueba sea en tal forma clara y convincente que no deje lugar a duda razonable de que un acto criminal ha sido cometido.

No erró, pues, la Comisión al no aplicar el inciso 3 del artículo 4, supra, pues de acuerdo con los hechos probados no

se demostró que la muerte del obrero de Jesús fuera consecuencia del acto criminal de una tercera persona.

■ Sí erró, a nuestro juicio, al resolver que el obrero recibió la lesión que le causó la muerte mientras desempeñaba una encomienda especial para su patrono. El hecho de habérsele adelantado la hora de salida para almorzar de las once y treinta a las once y quince de la mañana y la hora de entrada, después de almuerzo, de doce y treinta a doce y quince, no implica—y la prueba no demostró—que el obrero tuviera que realizar, mientras iba y venía, encomienda alguna para su patrono. El caso de *Atiles, Admor.* v. *Comisión Industrial*, 72 D.P.R. 417, y los demás en él citados establecen la regla aplicable al efecto de que un empleado viaja en el curso de su empleo solamente si el trabajo crea la necesidad de viajar, aparte del viaje corriente para ir al trabajo y regresar de éste.

■ Ahora bien, la Comisión también resolvió que el accidente era compensable por haber ocurrido tan cerca de la puerta de entrada del almacén donde trabajaba el obrero que, bajo la autoridad del caso de *Cordero, Admor.* v. *Comisión Industrial*, 61 D.P.R. 43, podía considerarse que ocurrió en los predios (*premises*) del patrono. Bajo las circunstancias concurrentes en el presente caso no erró la Comisión al así hacerlo.

La prueba demostró que el obrero venía caminando por la acera del almacén donde trabajaba; que ya había pasado frente a dos puertas del almacén que estaban cerradas; que al llegar a la tercera puerta, que es la de entrada al almacén y cuando ya se proponía entrar, fué alcanzado por la bala perdida, procedente del tiroteo entre nacionalistas y policías, e inmediatamente entró y al manifestar que estaba herido fué sentado en una silla y la puerta fué cerrada. El accidente—o sea el hecho de ser herido el obrero—ocurrió de doce y diez a doce y quince, es decir, precisamente a la hora en que el obrero, bajo el nuevo horario fijádole para dicho día, tenía que empezar su labor de la tarde.

El caso de *Cordero, Admor*. v. *Comisión*, supra, es buena autoridad para sostener la conclusión de la Comisión en el presente. Si en aquél resolvimos que el accidente era compensable por haber ocurrido mientras el obrero estaba en la carretera a la entrada de la finca del patrono esperando la hora de entrar al trabajo y fué lesionado por un automóvil que corría a velocidad por la carretera, *a fortiori*, debemos sostener que el accidente ocurrídole al obrero de Jesús en el de autos, quien recibió la lesión en la puerta de entrada del almacén en que trabajaba, también es compensable.

*Se confirma la resolución recurrida.*