ULPIANO VÉLEZ, ETC., recurrente, *v.* CÓMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada.

*Número:* CI-64-17 · *Resuelto:* 25 de enero de 1965

*Donald R. Dexter*, y *Miguel A. Guzmán Soto*, abogados del recurrente.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Después de hacer un extenso resumen de la prueba practicada en la vista de la reclamación presentada por Félix Donato Burgos, la Comisión Industrial hizo las siguientes determinaciones de hechos:

"La prueba presentada por el reclamante nos mereció entero crédito y de la misma quedó probado que el reclamante es Juez de Paz de Caguas; que para la fecha de 15 de junio de 1963, su plan de trabajo impuéstole por la Administración de los Tribunales le hacía estar las 24 horas del día listo para prestar servicios tanto para determinar causa probable como para la prestación de fianzas y expedir órdenes de arresto; que el día de los hechos luego de haber estado por la mañana y por la tarde en su oficina, al recibir una llamada del policía Juan Denis de que lo esperara en la oficina porque le iba a someter otros casos para investigación, a lo que estuvo de acuerdo el Juez Donato y en lo que llegaba el policía Denis, aprovechó para ir a comprar una carne para su uso personal, pero siempre con la idea de regresar a la oficina y esperar al policía.

"Demostró asimismo la prueba que al salir el reclamante para el puesto de carne y llegar a un garage que queda cerca de su oficina vino un automóvil a una velocidad exagerada y al llamársele la atención al chofer tanto por el reclamante como por el Márshall el chofer del automóvil adoptó una actitud violenta y en vista de dicha actitud el Juez de Paz, en sus funciones como tal, se dirigió al teléfono para llamar la policía y mientras esperaba que se pudiera hacer la llamada fue agredido por el chofer del automóvil Raúl Cintrón Maldonado. Quedó probado que como resultado de esta agresión el reclamante recibió tratamiento médico alrededor de cuatro meses recibiendo varias lesiones en su cuerpo.

"No hay duda que el accidente sufrido por el reclamente Félix Donato Burgos sucedió en el curso y como consecuencia de su

empleo como Juez de Paz y como una gestión inherente al mismo. Está entre los deberes del Juez de Paz velar por el orden, llevar a cabo investigaciones, intervenir en arrestos y prestaciones de fianzas y fue mientras realizaba una de estas funciones que fue agredido por un individuo que posteriormente se declaró culpable y fue acusado de acometimiento y agresión grave. No tiene mayor importancia el hecho de que el reclamante tuviera en mente ir a comprar unos artículos para su uso personal ya que siempre era su intención regresar a su oficina y todavía no había rendido las funciones de ese día."

Concluyó que se trataba de un accidente del trabajo y ordenó se le extendiera al reclamante toda la protección que provee la ley.

Como podrá observarse los factores que consideró la Comisión como decisivos para arribar a la conclusión de compensabilidad fueron: a) que entre los deberes del lesionado se encuentran el de velar por el orden, llevar a cabo investigaciones, intervenir en arrestos y prestaciones de fianza; b) que no tenía importancia que el empleado tuviera en mente una gestión de índole puramente personal, pues, de todas formas, intentaba regresar a su oficina a desempeñar funciones inherentes a su cargo; y, c) que el reclamante estaba sujeto el día del accidente a un horario de trabajo que le requería estar disponible durante las veinticuatro horas del día.

¿Puede decirse que en este caso concurren los tres requisitos para que un accidente sea compensable, a saber: que la lesión es el resultado de un acto o función inherente al empleo, que ocurrió en el curso del mismo y como consecuencia de éste? Creemos que, no obstante el prisma de excesiva liberalidad con que se intente analizar la situación fáctica, y aún ignorando ciertos hechos fundamentales incontrovertidos sobre los cuales el organismo recurrido no formuló determinaciones, [1] se impone una conclusión en la negativa.

---

[1] Entre estos hechos está la ignorancia del agresor sobre la identidad y cargo oficial que ocupaba el lesionado, quien, dicho sea de paso, admitió que era la primera vez que veía a su agresor.

Advertimos de entrada que en virtud de la aprobación de la Ley Núm. 7 de 7 de mayo de 1962, que enmendó el Art. 4 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 5, se suprimió como accidente exceptuado del derecho a compensación la lesión causada por el acto criminal de una tercera persona. (²)

■ Schneider, en su conocida obra *Workmen's Compensation Text*, vol. 6, § 1542, pág. 11, señala que "Para determinar si un accidente ocurrió como consecuencia del empleo es necesario considerar únicamente lo siguiente: (1) 'si se encontraba el empleado en gestiones de su empleo, y no meramente en gestiones personales o de recreo propio; y, (2) si requerían las exigencias del empleo que el lesionado estuviera en el lugar del accidente cuando éste ocurrió'." Más elaboradamente, añade, que "si el empleo crea la necesidad del recorrido, el empleado se encuentra en el curso del empleo aunque aproveche para realizar alguna gestión personal." Ahora bien, si el trabajo no requiere el recorrido y éste no se hubiese emprendido a no ser por la gestión personal, cualquier accidente ocurrido durante el mismo no puede atribuirse al empleo. Schneider, *op cit.*, vol. 7, § 1690, pág. 422. *Mutatis mutandis*, un recorrido que en sus inicios es de carácter puramente personal puede, por la incorporación de un incidente relacionado con el empleo, convertirse en uno de propósito dual, y si el accidente ocurre después de incorporado el elemento relacionado con el empleo, es compensable. Larson, *Workmen's Compensation Law*, vol. 1, § 19.25, pág. 271.

■ Aplicando los principios enunciados al presente caso, aparece claro que el lesionado había abandonado su oficina

---

(²) Para casos resueltos bajo el párrafo suprimido, véanse, *Atiles, Admor.* v. *Com. Industrial y Sucn. Álvarez*, 73 D.P.R. 15 (1952) y *Montaner, Admor.* v. *Comisión Industrial*, 50 D.P.R. 628 (1936).

Sobre la retroactividad de las disposiciones de la Ley Núm. 7, *supra*, a accidentes pendientes en 24 de enero de 1961, véase, *Gallart* v. *Comisión Industrial*, Rev. 601, sentencia de 3 de diciembre de 1962.

en la tarde de un sábado, para llevar a cabo una gestión puramente personal, como lo era la de adquirir ciertos comestibles, y que mientras se encaminaba a realizar tal gestión fue que tuvo lugar el altercado que dio margen a la agresión. (³) Ciertamente no se encontraba efectuando una investigación, ni intervenía en las funciones propias de su cargo, como expedición de órdenes de arresto y determinación de causa probable, a que se alude por la Comisión. Es por eso que tal vez se intenta injertar el elemento de la obligación de "velar por el orden público" que podría señalar una gestión oficial. Ello se hace depender de que "decidieron llamar a la policía" y entraron al puesto de gasolina y mientras el alguacil llamaba por teléfono, encontrándose el Juez Donato parado en la puerta del establecimiento, fue víctima de la agresión. Llamar la policía en circunstancias como las del

---

(³) El propio reclamante hace el siguiente relato:

". . . cuando íbamos cerca de la bomba de gasolina entró un automóvil; al entrar, venía a una velocidad exagerada y como ahí es bien ancho, salió de la carretera y entró a la bomba. El automóvil se hizo hacia encima del Sr. Juan García, el marshall; cuando vimos eso, yo halé al marshall; si no lo halo, lo hubiese estropeado. Yo le pregunté al marshall 'ese señor es amigo suyo?' y él dijo 'yo no sé, deja ver'; entonces fue hacia allá y cuando vio que no lo conocía, le llamó la atención; le dijo 'por poco me pisa', y el señor le dice 'y si lo piso qué?' Cuando yo veo eso, estoy cerca, como cinco o seis pasos de ellos; llego hasta allí y le digo al señor 'pero usted puede pisar la gente así?' Entonces dice él 'bueno, les paso por encima a los dos.' Entonces, me dice el marshall, 'Vamos a llamar la Policía para que investigue ésto.' Decidimos entrar al mismo puesto de gasolina y empezar a llamar la Policía; mientras eso ocurría, él prendió el automóvil, lo puso en marcha y se fue. Entramos al puesto, a la oficina; estábamos el marshall y yo y el dueño del garage, Sr. Rafael Aponte; yo estoy parado en la entrada de la oficina, pero dentro.

"P—Qué fueron a hacer allí?

"R—A llamar la Policía para notificarle de eso; la cuestión del incidente. Cuando estamos así, que vamos a marcar el número del teléfono de la Policía, estaban sentados el Sr. Juan García y el dueño del garage al teléfono; yo estoy parado en la puerta; en eso siento un golpe, hago así y me cayeron los dientes en las manos; . . . ."

En el escrito de apelación se describió el accidente así: "al él [se refiere al reclamante] tratar de llamar la policía *en una discusión* con un automovilista éste lo agredió. . . ."

presente caso con el propósito de que inicie una investigación para fijar responsabilidad criminal por unos hechos en que el lesionado es uno de los protagonistas no era una función inherente a su cargo; (⁴) más bien, era la actuación de cualquier ciudadano en su carácter particular que informa sobre la comisión de un acto delictivo. No se trataba de un riesgo a que se vio expuesto el lesionado por su condición de juez, sino de un riesgo común a todos los ciudadanos. Cf. *Gallart, Admor.* v. *Comisión Industrial,* 89 D.P.R. 581 (1963).

▌ Finalmente el hecho de que el Juez Donato, por una disposición administrativa del Director Administrativo de los Tribunales, estuviere sujeto a ser llamado durante las veinticuatro horas del día para realizar ciertas funciones relacionadas con su cargo, no significa que cualquier accidente—no importa su origen—pueda atribuirse al empleo. Es necesario que haya alguna relación causal, aunque sea incidental, con el empleo, que ocurra en ocasión del desempeño de los deberes del cargo. Cf. *Bush* v. *Houston Fire & Casualty Ins. Co.,* 152 So.2d 377 (La. 1963); *Sloss-Shefield Steel & Iron Co.* v. *Harris,* 117 So. 755 (Ala. 1928). Esto dispone igualmente de la importancia que se le concede al hecho de que el Juez Donato intentaba regresar a su oficina para atender unos asuntos que le serían sometidos para su consideración.

*Se revocará la resolución de la Comisión Industrial, de 28 de mayo de 1964.*

El Juez Presidente Señor Negrón Fernández disintió.

---

(⁴) La Sec. 22 de la Ley de la Judicatura, 4 L.P.R.A. sec. 202, dispone que los jueces de paz "ejercerán todas las funciones y poderes de la autoridad judicial ejercidos por los jueces de paz al tiempo en que dicha ley comenzó a regir, incluyendo la función y facultad de fijar y aprobar fianzas y de expedir órdenes de arresto y de registro y allanamiento . . . excepción hecha de que ellos no pueden resolver casos de la competencia del Tribunal de Distrito o del Superior." *Pueblo* v. *Tribunal Superior,* 80 D.P.R. 504 (1958). La ley anterior—Núm. 432 de 15 de mayo de 1950—proveía que el juez de paz podría señalar y aceptar fianzas y actuar como juez de instrucción en todo caso de delito grave.

—0—

Voto disidente del Juez Presidente Señor Negrón Fernández
San Juan, Puerto Rico, a 25 de enero de 1965

Disiento por considerar que la determinación de la Comisión Industrial al declarar compensable el caso del Juez de Paz Félix Donato Burgos fue correcta.

El criterio para compensar o no este caso no es el de si el Juez de Paz abandonó su oficina para llevar a cabo una gestión puramente personal, sin que se encontrara efectuando una investigación, ni tampoco si el agresor sabía que el agredido por él era un Juez de Paz. A mi juicio, el criterio determinante de la naturaleza compensable del caso es el de que el Juez de Paz, como funcionario judicial—no importa que hubiere salido de su oficina en una gestión de índole personal—ejercía una función lícita relacionada con los deberes de su cargo, como era la de llamar a la policía por teléfono para denunciarle un hecho que acababa de apreciar por sí mismo en violación de la ley, que lo exponía a ser agredido—como en ese instante lo fue por el infractor.

No importa que la agresión hubiera podido recibirla cualquiera otra persona, aunque no fuera Juez de Paz, o que la llamada a la Policía la hubiera ordenado hacer cualquiera otra persona, aunque tampoco fuera Juez de Paz. Lo importante es que el trabajo, o las condiciones del trabajo, traigan en contacto al empleado con el riesgo que causó el daño. 2 NACCA L.J. 18, 20–21 *et seq.*; 13 NACCA L.J. 52 *et seq.*

Entre las facultades que la Regla 14 de las de Procedimiento Criminal confieren a los *magistrados*, entre los cuales se encuentra el Juez de Paz, (Regla 3) está la de ordenar a cualquier agente de orden público el arresto de una persona. No importa que el agente de orden público no estuviere presente para recibir una orden inmediatamente de parte del Juez de Paz para intervenir con el violador de la ley. La gestión por teléfono tendía al mismo fin y pertenece a la esfera

de las facultades incidentales del Juez de Paz. 3 NACCA L.J. 46, notas 85 y 86. Por su condición de magistrado, venía obligado a no eludir la responsabilidad de notificar a la policía la violación de ley por él observada.

Bajo las condiciones apuntadas me parece errónea la conclusión a que llega la mayoría.