AGUSTÍN CANDELARIA Y OTROS, recurrentes, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, recurrida.

*Número:* 573   *Resuelto:* 15 de marzo de 1962

*Gilberto R. Padró Díaz,* abogado de los recurrentes; *Donald R. Dexter, Jorge de la Cruz Figueroa, Ángel de Jesús Matos, Luis Muñiz Álvarez* y *Carmen Ana Archevald,* abogados del Fondo del Seguro del Estado.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Se trata en este recurso de dos accidentes del trabajo; uno ocurrido en el barrio Dominguito de Arecibo, en la finca del patrono Ramón Quiles Molina y otro ocurrido en el barrio Islote de Arecibo, en la finca del patrono Joaquín Lago Padín. El accidente en el barrio Dominguito y que comprende a los obreros Margaro González Vélez, Ramón Cuevas Martínez y Agustín Candelaria, ocurre de la manera siguiente: El día 25 de agosto de 1958, el capataz Margaro González, y los peones Ramón Cuevas Martínez y Agustín Candelaria trabajaban junto a su patrono en la finca de éste; ese día el tiempo estaba nublado y al llegar el momento de almorzar, el patrono se retiró del trabajo porque se sentía mal, advirtiéndole a los otros de que se quedaran en un rancho que se usaba para escampar, mientras durara la lluvia y que si seguía lloviendo no trabajaran por la tarde; mientras estaban escampando en el rancho, cayó dentro un rayo que mató al capataz Margaro González y al obrero Ramón Cuevas Martínez, lesionando al obrero Agustín Candelaria.

El accidente en el barrio Islote y que comprende a los obreros Luis G. Álvarez Valle, Juan Betancourt, Ángel Luis Maldonado y Andrés Roja Santiago ocurre de la manera siguiente: El día 19 de agosto de 1958 dichos obreros trabajaban bajo las órdenes del capataz Cecilio Campos Reyes; después del almuerzo, empezaron a trabajar, pero como al cuarto de hora, tuvieron que suspender el trabajo debido a la lluvia, dirigiéndose a guarecerse bajo el alero de una casa situada en la misma finca del patrono donde vivía Ángel Luis Morales y comía Juan Betancourt; estando por llegar a dicho alero, según los obreros, o después de llegar al alero, según la prueba de la administración, cayó un rayo frente a la casa que mató a Luis G. Álvarez Valle y lesionó a Juan Betancourt, Ángel Luis Maldonado y Andrés Roja Santiago.

El Administrador del Fondo del Seguro del Estado y la Comisión Industrial de Puerto Rico denegaron las compensaciones, por entender, que en realidad de derecho, no se trataba de accidentes del trabajo sinó de riesgos comunes a la vecindad. En su revisión ante nos, los beneficiarios de los obreros que fallecieron y los obreros lesionados, señalan como error principal la conclusión de derecho de no estar comprendidos estos casos entre los riesgos previstos por el art. 2 de la Ley número 45 de 18 de abril de 1935, según enmendado, —11 L.P.R.A. sec. 2—que estatuye: "Las disposiciones de este capítulo serán aplicables a todos los obreros y empleados que trabajen para los patronos a quienes se refiere el párrafo siguiente, que sufren lesiones o se inutilicen, o que pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muerte derivadas de la ocupación, según se especifican en la sección siguiente". . . . ■

Estos tres conceptos: (1) que provengan de cualquier acto o función (*arising out of*); (2) inherente a su trabajo o empleo (*peculiar to the work*); (3) y que ocurran en el curso de éste (*in the course of*) fueron objeto, en el pasado, de sutiles interpretaciones que lograron inmovilizar el ánimo reparador de la nueva institución. Casi todas las teorías que rigieron, y aún rigen, las compensaciones por negligencia civil le fueron aplicadas a este tipo de compensación especial que, sin duda alguna, no participa de la naturaleza de una acción civil por negligencia. Felizmente, la jurisprudencia moderna ha ido corrigiendo este enfoque erróneo y liberalizando las normas que se desarrollaron en torno a los tres conceptos clásicos, creando una relación causal con el acto de trabajo que permita una más ancha aplicación del seguro social implícito que tipifica la compensación por riesgo obrero. Como un indicio claro de nuestra propia actitud ante el problema, véase: *Cordero, Admor.* v. *Comisión In-*

*dustrial*, 61 D.P.R. 361 (Del Toro), (1943), cita precisa a las págs. 365–367. ■

En los casos de muerte o lesión producidas por un rayo, además de las exigencias ordinarias de haberse originado el accidente por algún acto o función, inherente al trabajo en el curso normal del mismo, establecidas por los estatutos o la anterior jurisprudencia, siguiendo el mismo enfoque de considerar la compensación obrera como una compensación civil por negligencia, se exigió además que el riesgo por las condiciones del trabajo resultara mayor que el riesgo que corría el resto de la comunidad y que el accidente no fuera causado por esa fuerza ciega de la naturaleza, no susceptible de ser controlada por el hombre, que con un sentido metafórico de dudosa validez, se conoce como el "acto de Dios". Felizmente, hoy podemos contemplar esa exigencia adicional con la tranquilidad con que suelen contemplarse "los venerables restos de un amado fósil". La jurisprudencia ha establecido que basta la relación causal de la muerte o lesión por rayo con el hecho de que, al momento de caer el rayo, el obrero se encontraba trabajando, para que el accidente se considere compensable, sin tener que probarse si el riesgo en que se encontraba el obrero era mayor o menor del riesgo que corría el resto de la comunidad: *C. A. Dunham Company* v. *Industrial Commission*, 156 N.E.2d 560 (Bristow) (1959). cita precisa a las págs. 561 y 565; *Madin* v. *Industrial Accident Commission*, 292 F.2d 892 (Carter) (1956), cita precisa a la pág. 896; *Bergren* v. *S. E. Gustafson Construction Company*, 68 N.W.2d 477 (Smith) (1955), cita precisa a las págs. 479–480; *Crutchfield et al.* v. *Bogle et al.*, 270 P.2d 640 (Davison) (1954), cita precisa a la pág. 642; *McKinley* v. *Reynolds & Manley Lumber Company*, 54 S.E.2d 471 (MacIntyre) (1949), cita precisa a las págs. 473–474; Horovitz—*"Compensación Obrera: Medio Siglo de Desarrollo Judicial"* 41 Nebraska Law Review 18–21 (1961); Horovitz—*"Lesión y Muerte bajo las Leyes de*

*Compensación a Obreros*", págs. 99–107, cita precisa a las págs. 106–107 (edición de Wright & Potter Printing Co. de 1948). ▮

El hecho de que el accidente se produjera, en un caso, mientras los obreros estuvieran escampando en un rancho, y en el otro, mientras estaban guareciéndose de la lluvia en un alero de una casa dentro de la finca del patrono al salir del trabajo, no puede cambiar la teoría del caso. La regla del bienestar (*personal comfort rule*), hace compensable como un riesgo incidental al trabajo el período de tiempo que emplea un obrero en caminar hacia su empleo o regresar a su casa, tomar un descanso dentro de los períodos de trabajo o almorzar, si permanece dentro de la heredad o establecimiento del patrono (*premises*): *Atiles, Admor.* v. *Com. Industrial y Sucn. Álvarez,* 73 D.P.R. 15 (Todd, hijo) (1952), cita precisa a las págs. 25–26; *Atiles, Admor.* v. *Comisión Industrial y Sucn. González,* 69 D.P.R. 951 (De Jesús) (1949), cita precisa 953; *Cordero, Admor.* v. *Comisión Industrial,* 61 D.P.R. 43 (Travieso) (1942), cita precisa a las págs. 45–46; *Sweet* v. *Kolosky,* 106 N.W.2d 908 (Knutson) (1960), cita precisa a la pág. 910; *Krier* v. *Dick's Linoleum Shop,* 98 N.W.2d 486 (Roberts) (1960), cita a las págs. 487–488; *Van Roy* v. *Industrial Comm.,* 92 N.W.2d 818 (Currie) (1958), cita precisa a las págs. 823–824; *Krause* v. *Western Casualty & Surety Co.,* 87 N.W.2d 875 (Currie) (1958), cita precisa a la pág. 882; *American Motors Corp.* v. *Industrial Commission,* 83 N.W.2d 714 (Steinle) (1957), cita precisa a las págs. 718–719.

La exclusión especial o adicional que se hace del obrero Ángel Luis Maldonado por haber llegado al alero de la casa donde vivía, no nos convence. La juntura de tiempo puede convertirse en una usura del ánimo, incompatible con el espíritu reparador del estatuto.

*Deben revocarse las resoluciones de la Junta recurrida.*