JOAQUÍN GALLART MENDÍA, ETC., recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, demandada; ANTONIA RAMOS VDA. DE GONZÁLEZ ET AL., interventores.

Número: 600     Resuelto: 27 de diciembre de 1962

18

*Donald R. Dexter* y *Carmen Ana Archeval,* abogados del recurrente; *Ángel Manuel Ciordia,* abogado de los interventores.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

Solicita el Administrador del Fondo del Seguro del Estado que revisemos la resolución de la Comisión Industrial de Puerto Rico que concede compensación por la muerte del obrero Félix González Otero ocasionada al caerse y ahogarse en un río mientras regresaba del trabajo a su casa, después de caminar por un atrecho como un kilómetro desde el sitio en la carretera donde lo dejara el vehículo de su patrono que le proveía transportación de ida y vuelta del trabajo.

Creemos que no se ha cometido el error señalado de proveer compensación en este caso. Por el contrario, llegamos a la conclusión que debe confirmarse la resolución de la Comisión. ■

Las conclusiones de hechos en que se basa la resolución de la Comisión están sostenidas por prueba sustancial presentada en la vista correspondiente y, por lo tanto, debemos aceptarlas a los efectos de disponer del caso. *Cepeda* v. *Comisión Industrial,* 76 D.P.R. 801 (1954); *Colón* v. *Comisión Industrial,* 59 D.P.R. 850 (1942).

La Comisión concluyó que "el obrero Félix González Otero vivía en el barrio Morovis Norte, de Morovis; que trabajaba con el señor José Alicea en la finca de éste, ubicada en el barrio Franqui de Morovis; que el patrono proveía la transportación para llevar y traer los obreros de su casa al trabajo y viceversa; que se utilizaba para este medio una guagua que guiaba Antonio Alicea Fernández; que el obrero occiso para poder coger la transportación que proveía el patrono tenía que esperarla en un sitio específico y si no lo

hacía así, entonces no se le proveía la transportación; que esto se hacía para la comodidad del patrono, ya que si la guagua cogía por otro camino de Morovis era mucho más lejos y tenía que llegar al pueblo, cuando no había necesidad, por lo que la ruta que seguía era por la carretera de Vega Baja y por un atrecho salía por el barrio Almirante Sur y los obreros acostumbran esperar la guagua en el cruce de Morovis a Corozal."

"La prueba también demostró que la casa del obrero quedaba más cerca de Morovis que de Vega Baja; que el camino usual para llegar a la casa era por Morovis, y tanto era así, que todas las actividades normales y naturales de la vida de esta familia, como es la compra de alimentos, de ropa, recreación, lo hacía en el pueblo de Morovis y no en Vega Baja."

"Demostró, asimismo la prueba, que el obrero siguiendo las instrucciones de su patrono que le proveía la transportación no podía usar la vía ordinaria de Morovis, sino, que tenía que atravesar un predio de terreno, cruzar el río, y así llegar al sitio donde lo estaba esperando la guagua de su patrono. Este camino lo tenía que transitar dos veces, por la mañana cuando iba a coger la guagua y por la tarde cuando lo dejaba la guagua de su patrono."

"No hay duda de que el obrero se beneficiaba con la transportación provista por su patrono, pero existiendo el convenio de suministrar dicha transportación, el patrono se beneficiaba mucho más exigiéndole al obrero que la esperara en un sitio determinado escogido por el propio patrono."

"El día de los hechos, o sea, el día 1ro. de julio de 1960, el obrero fue al trabajo igual que lo hizo todos los días. Al finalizar la jornada de ese día abordó la guagua del patrono que lo transportaría a su hogar. La guagua siguió el camino usual de Vega Baja a Almirante Norte hasta llegar al cruce de Morovis-Corozal donde dejaba al obrero. El

obrero se bajó, siguió caminando y al ir a cruzar el río resbaló, aparentemente perdió el conocimiento y murió ahogado."

Las partes acordaron que de ser compensable la muerte del obrero, sus dependientes serían su viuda, doña Antonia Ramos y los menores, Fernando, Ignacio, Carmen, Antonia, Florentina y Luz Celenia González Ramos.

A la luz de los hechos relacionados previamente, concluyó la Comisión que "el obrero, al seguir las indicaciones de su patrono, se exponía a un riesgo adicional, a un peligro constante, inherente y peculiar, como era el de cruzar un río, y este hecho en sí lo coloca . . . dentro de las excepciones de los llamados "riesgos de la calle" por lo que su muerte ocurrió en el curso y como consecuencia de su trabajo." Por el contrario, el recurrente en efecto alega que la muerte del obrero ocurrió con motivo de un accidente comprendido por la doctrina conocida como "la regla de ir y venir del trabajo" y que habiendo ocurrido el accidente después que el occiso había abandonado el vehículo del patrono y caminado cerca de un kilómetro por un atrecho a su casa, el mismo no es compensable.

El breve análisis que hacemos a continuación tanto de la doctrina denominada "riesgos de la calle" como de la designada "la regla de ir y venir del trabajo" nos lleva a la conclusión que para llegar a una decisión en este caso en consonancia con la Ley de Compensaciones por Accidentes del Trabajo(1) y que a la vez refleje modernos enfoques socioeconómicos sobre compensación a obreros,(1a) es necesario

---

(1) 11 L.P.R.A.—Secs. 1–42

"Sec. 2. *Obreros y empleados comprendidos en el capítulo.*

Las disposiciones de este capítulo serán aplicables a todos los obreros y empleados que trabajen para los patronos a quienes se refiere el párrafo siguiente, que sufran lesiones o se inutilicen, o que pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muerte derivadas de la ocupación, según se especifican en la sección siguiente. Se exceptúan expresamente aquellos obreros y empleados dedicados al servicio doméstico y aquellos cuya labor sea de carácter accidental o casual y no esté comprendida dentro del ne-

analizar el caso a base de sus circunstancias particulares y determinar el nexo causal entre el accidente y la naturaleza y condiciones del empleo. ▮

Arguye el recurrente que la doctrina aplicable a este caso es "la regla de ir y venir del trabajo", o sea, que aquellos accidentes del trabajo ocurridos mientras el obrero va de su casa al trabajo y del trabajo a su casa no son compensables. *Figueroa* v. *Comisión Industrial*, 72 D.P.R. 505 (1951); *Atiles, Admor.* v. *Comisión Industrial*, 72 D.P.R. 417 (1951); *Ríos* v. *Comisión Industrial*, 66 D.P.R. 404 (1946). ▮

Esta regla, sin embargo, ha sido modificada a través de los años por excepciones que atienden a las circunstancias particulares de cada caso. Así se ha sostenido la compensabilidad de accidentes ocurridos mientras se viaja hacia el trabajo o de regreso al hogar si: 1) el empleado viaja en un vehículo propiedad del patrono o proporcionado por éste, ya sean vehículos de una compañía privada o cuando se utilicen los llamados "car pools" con el consentimiento del patrono; 2) el empleado está sujeto a ser llamado a su trabajo en cualquier hora o en el momento de la lesión; 3) el empleado está viajando para beneficio del patrono; 4) el patrono compensa en parte o totalmente al empleado por el tiempo que emplea en viajar entre su hogar y el trabajo; 5) el empleado está realizando una encomienda especial para su patrono; 6) el empleado se dirige a su casa para hacer trabajo adicional, aunque sea empleado a sueldo fijo; o 7) se requiere del empleado que lleve su automóvil al lugar del trabajo para usarlo allí. Véanse Horovitz, *Workmen's Compensation: Half Century of Judicial Developments*, 41 Neb. L. Rev. 1 (1961) y 14 N.A.C.C.A. L. J. 36

gocio, industria, profesión u ocupación de su patrono y además aquellas personas que trabajen en sus domicilios."

(1a) Recientemente se presentó legislación ante la consideración de las cámaras legislativas para determinar la forma en que los obreros estarán protegidos por ley cuando se dirijan o regresen del trabajo. Véase, P. de la C. 335, presentado en 1961, y que se encuentra aún pendiente.

(1954). La excepción que más se aproxima a los hechos de este caso es la que cubre los accidentes ocurridos de regreso al hogar cuando el patrono provee la transportación. Se ha sostenido reiteradamente que estos accidentes son compensables. Cfr. *Cordero, Admor.* v. *Comisión Industrial*, 60 D.P.R. 873 (1942); *Jasaitis* v. *City of Paterson*, 150 A.2d 55 (N.J. 1959); *Owens* v. *Southeast Ark. Transp. Co.*, 228 S.W.2d 646 (Ark. 1950); *Bailey* v. *Santee River Hardwood Co.*, 32 S.E.2d 365 (S.C. 1944). No obstante haberse extendido esta excepción hasta cubrir casos en que el accidente ocurre poco antes de abordar el vehículo proprcionado por el patrono o poco después de abandonarlo—Cfr. *Jasaitis* v. *City of Paterson*, supra; *Ward* v. *Cardillo*, 135 F.2d 260 (C.C.A.-D.C. 1943); *Radermacker* v. *St. Paul City Ry.*, 8 N.W.2d 466 (Minn. 1943); *Hant* v. *Gaseteria*, 12 N.E.2d 992 (Ind. 1938); Schneider, *Workmen's Compensation Text*, Vol. 8 secs. 1747–1748—los hechos del presente caso no ameritan que se aplique la doctrina de "ir y venir del trabajo." ∎

El caso de *Atiles, Admor.* v. *Comisión Industrial y María P. de Jesús*, 64 D.P.R. 618 (1945) que trata sobre un accidente sufrido por una profesora durante el trayecto de su casa al trabajo, es uno muy especial. A pesar de que el patrono no proveía tal transportación, se declaró compensable dicho accidente ya que el trabajo de la profesora lesionada comenzaba cada día desde que salía de su casa, cargada de libros y material escolar hasta que regresaba a su casa por la tarde. En los casos de *Ríos* v. *Comisión Industrial*, 66 D.P.R. 404 (1946); *Figueroa* v. *Comisión Industrial*, 72 D.P.R. 505 (1951); y *Atiles, Admor.* v. *Comisión Industrial*, 72 D.P.R. 417 (1951), distinguimos el caso de *de Jesús* indicando que la decisión en este caso se debía a "circunstancias especiales y extraordinarias que el mismo presentaba". De esta manera se reiteró la regla general de que en ausencia de circunstancias especiales, los accidentes sufridos mien-

tras el empleado viaja de su casa al trabajo y de regreso a su casa no son compensables.

Resulta también difícil justificar la compensación en este caso, como sostuvo la Comisión, a base de que el caso cae "dentro de una de las excepciones de los llamados riesgos de la calle". ■

Originalmente, bajo la doctrina de "riesgos de la calle" las cortes en los Estados Unidos adoptaron la teoría de que ciertos accidentes atribuibles a riesgos que afectaban a la comunidad en general, no eran compensables debido a que los mismos no eran peculiares del trabajo o empleo. *Donahue* v. *Maryland Case Co.*, 116 N.E. 226 (Mass. 1917); *Colarullo's Case*, 155 N.E. 425 (Mass. 1927); 139 A.L.R. 1472. No obstante tomarse en consideración esta teoría, se han considerado compensables aquellos accidentes ocurridos en las vías públicas y surgidos de los "riesgos de la calle" cuando la naturaleza del trabajo le exige al obrero su presencia constante en la calle exponiéndolo así a dichos riesgos con mayor frecuencia. *Keany's Case*, 132 N.E. 739 (Mass. 1919); *Central Surety & Ins. Corporation* v. *Court*, 36 S.W.2d 907 (Tenn. 1931). Sin embargo, la doctrina de los riesgos de la calle ha sido interpretada recientemente en el sentido de que son compensables los accidentes sufridos por un obrero en la vía pública si su presencia en ésta se debe a su trabajo. *Emmanuelli* v. *Comisión Industrial*, 69 D.P.R. 910 (1949); *Locke* v. *Steele County, et, al.*, 27 N.W.2d 285 (Minn. 1947); *Kennedy* v. *Thompson Lumber Co.*, 26 N.W.2d 459 (Minn. 1947); *Truck Insurance Exch.* v. *Industrial Accident Commission*, 167 P.2d 705 (Cal. 1946). La compensación de estos accidentes descansa en el principio que, de acuerdo a las circunstancias del caso, existe un nexo causal entre el trabajo y el accidente, o sea, que éste proviene de "cualquier acto o función inherente a su trabajo o empleo", tal y como dispone el Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo—11 L.P.R.A. sec. 2. ■

La doctrina de los "riesgos de la calle" es aplicable a los casos en que por motivo de la naturaleza del trabajo y mientras está ocupado en el mismo, el obrero tiene que utilizar la vía pública ocasional o frecuentemente y al así hacerlo sufre un accidente. Cfr. *Atiles, Admor.* v. *Comisión Industrial y Sucn. Alvarez*, 73 D.P.R. 15 (1952). ■

De lo expuesto previamente se desprende que es sumamente difícil tratar de resolver casos como el que nos ocupa, mediante la aplicación de determinadas reglas o fórmulas. Es preferible, a nuestro juicio, analizar cada caso de esta índole, según sus circunstancias particulares, según la relación o nexo causal que pueda existir entre la lesión y el empleo, a la luz de la norma amplia y general que establece la ley al disponer compensación en casos de "accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste y como consecuencia del mismo". 11 L.P.R.A. sec. 2.

En el caso de *Tromba* v. *Hardwood Manufacturing Co.*, 177 A.2d 186 (R.I. 1962), en que se negó compensación por daños sufridos con motivo de una caída sufrida por la empleada en una acera cubierta de hielo antes de llegar al local donde trabajaba, por no estar el accidente relacionado con el empleo, la corte dijo:

"Parece claro que el empleado lesionado tiene derecho a ser compensado debido a una incapacidad resultante de una lesión *cuando se establece un nexo entre la lesión y su empleo. Entonces no sería propio determinar su derecho a compensación únicamente a base del sitio donde se sufrió la lesión, sea éste dentro o fuera del establecimiento del patrono.*" (Énfasis nuestro.)

En *Brousseau* v. *Blackstone Mills*, 130 A.2d 543 (N.H. 1957), en que también se denegó compensación por daños sufridos debido a una caída en una acera cubierta de hielo y en el que no se probó nexo alguno entre el accidente y el empleo, la corte se expresó así:

"El estado de empleado puede existir antes de comenzar el trabajo y continuar después que el trabajo ha cesado . . . El hecho de que el empleado esté viajando hacia o desde el trabajo por una calle pública no necesariamente excluye el estar protegido por la Ley de Compensación a Obreros . . . Generalmente hablando, sin embargo, *se ha concedido compensación en casos fuera del establecimiento cuando ha existido un riesgo en particular que puede decirse que el patrono causó o permitió que existiera.*" (Énfasis nuestro.)

En *American Hardware Mutual Insurance Co.* v. *Burt,* 120 S.E. 2d 797 (Ga. 1961), en que se concedió compensación por lesiones ocasionadas a un mensajero de farmacia al conducir un patinete de motor (*motor scooter*) suministrado por el patrono para que dicho empleado acelerase la ida a su hogar y regreso al trabajo a la hora de la comida, la corte descartó la doctrina de que "los casos de la hora del almuerzo" no son compensables, y resolvió que:

"Si se suministró transportación con el objeto de lograr que el empleado estuviera en su trabajo prontamente en la mañana y al hogar por la noche o de salir de y regresar al trabajo prontamente a la hora de almuerzo, no es de por sí decisivo; *la cuestión es si el suministrar transportación es para beneficio del patrono y es un incidente del contrato de empleo. En este caso se utilizó para ambos propósitos.*" (Énfasis nuestro.)

En *Nelson* v. *City of Saint Paul,* 81 N.W.2d 272 (Minn. 1957), se concedió compensación a una maestra lesionada en una rodilla por una bola bateada por un discípulo desde el campo de juego de la escuela y mientras la maestra se dirigía al plantel por una acera del establecimiento a pesar de que el estatuto aplicable en este caso no cubría a empleados "excepto cuando estuviesen ocupados dentro, en o en los alrededores del establecimiento donde se están rindiendo sus servicios, o donde sus servicios requieren su presencia como parte de tales servicios, al ocurrir la lesión." Dijo la corte en este caso que:

"Para que una lesión sea compensable, debe satisfacer cada uno de dos requisitos, o sea, que debe (1) 'ocurrir en el curso' y (2) como consecuencia del empleo . . . . . La frase 'como consecuencia del' empleo expresa el requisito de que debe haber una relación causal entre las condiciones que el patrono establece para el empleado y la lesión resultante de éste. *La relación causal requerida . . . existe si el empleo, por razón de su naturaleza, obligación o incidentes, puede razonablemente determinarse que es la fuente del riesgo que produce la lesión. La relación causal como tal fuente surge . . . si el empleo, como parte de las condiciones del trabajo, peculiarmente expone al empleado a peligros externos por virtud de lo cual queda sujeto a riesgos distintos o mayores que los que prevalecerían si aquél estuviese atendiendo sus asuntos personales ordinarios."* (Énfasis nuestro.) ▪

"Aunque la lesión del empleado ocurrió fuera del empleo, tenemos todavía la cuestión de si ocurrió 'en el curso del' empleo. Esta frase 'en el curso del' empleo se refiere a los factores de tiempo y lugar y quiere decir que para ser compensable, la lesión debe ocurrir dentro de los límites de tiempo y espacio del empleo."

Al determinar en este caso que la lesión ocurrió dentro de tales límites de tiempo y espacio del empleo, la corte indicó que:

"*. . . cuando los peligros del empleo sobrepasan las líneas de demarcación y ocasionan una lesión a un empleado en su camino al trabajo, la lesión ocurre dentro de las limitaciones estatutarias del espacio del local del patrono.*" (Énfasis nuestro.)

Véase, además, *Lunn* v. *Columbian Steel Tank Company*, 275 S.W.2d 298 (Mo. 1955); *Giracelli* v. *Franklin Cleaners & Dyers*, 42 A.2d 3 (N.J. 1945); 15 NACCA L. J. 86–87 (1955); 14 NACCA L. J. 36 (1954), y la nota titulada *Workmen's Compensation Law in New England:* " '*Arising Out of' and 'In the Course of' the Employment*", 42 B.U.L. Rev. 492 (1962). ▪

En el caso ante nos, la Comisión determinó que (1) el occiso Félix González vivía más cerca de Morovis que de Vega Baja; el camino usual para llegar a su casa era por

Morovis, de manera que todas las actividades normales y usuales de la vida de su familia, como es la compra de alimentos, ropa y recreación, se hacían en el pueblo de Morovis; (2) el patrono le proveía transportación para ir y venir del trabajo, desde el cruce de Morovis a Corozal; (3) el lugar donde se recogían o dejaban a los obreros por el vehículo del patrono fue escogido por éste por su propia conveniencia ya que los demás obreros vivían por las cercanías y, además, el llevar al occiso a su casa por vía de Morovis requería un viaje más largo dos veces al día para transportar a un solo obrero; (4) para utilizar la transportación que le proveía el patrono, González no podía usar la vía ordinaria de Morovis, sino que se veía obligado a utilizar el atrecho, cruzar el río y así llegar al sitio donde lo esperaba el vehículo del patrono. Es evidente, pues que para cumplir con una de las condiciones del empleo, el occiso tenía que transitar por el referido atrecho, y que fue expuesto a un riesgo peculiar que puede decirse que el patrono causó o permitió que existiera y que no existía en relación con las actividades ordinarias y usuales del obrero y su familia. Establecido el nexo causal entre el accidente y el trabajo por razón de las circunstancias de la transportación que proveía el patrono al obrero, y que el peligro creado dentro de las condiciones del empleo sobrepasaba las líneas de demarcación del local del trabajo, resulta inmaterial que el riesgo a que por tal motivo fue expuesto el obrero y que le ocasionó su muerte, surgiese a cierta distancia del lugar donde se iniciaba y cesaba la transportación y no en las inmediaciones de tal lugar. Las circunstancias de este caso obviamente se distinguen de las del caso de *Guillot* v. *Comisión Industrial,* 60 D.P.R. 674 (1942), en que denegamos compensación por la muerte de un obrero ocurrida al sufrir un accidente en la vía pública mientras regresaba del trabajo a su casa en su propia bicicleta. Más bien se asemejan a las de *Cordero, Admor.* v. *Comisión Industrial,* supra, en que concedimos compensación

por la muerte de un obrero mientras trataba de trasladarse de un vehículo en marcha a otro provisto por el patrono para su transportación. Aunque pudiera calificarse este caso de dudoso, creemos que, dentro de la interpretación liberal que debe dársele a la Ley de Compensaciones por Accidentes del Trabajo, cualquier duda debe resolverse a favor de la compensación. *Vda. de Meléndez* v. *Comisión Industrial,* 85 D.P.R. 58 (1962); *Candelaria* v. *Comisión Industrial,* 85 D.P.R. 20 (1962); *Atiles Moreu, Admor.* v. *Comisión Industrial,* 85 D.P.R. 218 (1962); *Cordero* v. *Comisión Industrial,* supra.

*Confirmamos, por lo tanto, la resolución de la Comisión Industrial en este caso.*