RAMÓN ANTONIO VALENTÍN NADAL, recurrente, *v.* COMISIÓN
INDUSTRIAL DE PUERTO RICO, ETC., demandada.

*Número:* CI-66-21          *Resuelto:* 6 de junio de 1967

*Manuel De Jesús Mangual,* abogado del recurrente; los abogados del Administrador del Fondo del Seguro del Estado no comparecieron.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

De acuerdo con el dictamen de la Comisión Industrial, en este caso el peticionario Ramón Antonio Valentín Nadal testificó que trabajaba para la Defensa Civil en los Cuarteles de la Guardia Nacional en la parada 3½, en San Juan; que al regresar al trabajo luego de almorzar en un restaurante cercano, se lesionó al ocurrir un accidente en la Avenida Muñoz Rivera; que iba en un vehículo de motor junto con otros compañeros.

De acuerdo con el plano admitido en evidencia, el vehículo subió hacia la Avenida Muñoz Rivera por la calle que queda entre el "Weather Bureau" y el edificio de la Guardia Nacional y al final dobló a la izquierda. Testificó además el peticionario que venían por el carril del medio e iban a tomar el izquierdo para entrar al edificio de la Guardia Nacional; que el conductor perdió el control del vehículo por lo que chocaron con el poste que queda frente a la pared de la Guardia Nacional; que el accidente ocurrió como a 35 pies del portón de entrada a los terrenos del patrono.

No existe controversia en cuanto a estos hechos, excepto que el peticionario indica que (1) el automóvil "al chocar contra el poste de la luz cayó en la misma acera del edificio del patrono" y (2) la vía pública donde ocurrió el accidente "cruza o atraviesa una propiedad que está a ambos lados de la carretera, o sea, frente a la Guardia Nacional están los laboratorios y otros terrenos que son propiedad también del gobierno." El peticionario no ha expresado con la debida exactitud la localización de la avenida pública en el lugar donde ocurrió el accidente. Lo cierto es que no se trata de una sola propiedad a ambos lados de dicha avenida sino de dos propiedades. Una pertenece al gobierno estatal y la ocupa la Guardia Nacional. La otra pertenece al gobierno federal y la ocupan unos laboratorios de una agencia de dicho gobierno.

Concluyó la Comisión que (1) al ocurrir el accidente el peticionario no tenía encomienda especial del patrono ni gestión alguna que realizar en su beneficio y por lo tanto no

estaba en el curso de su trabajo; (2) el accidente ocurrió exclusivamente por falta de pericia del conductor del mismo; y (3) el accidente no ocurrió en terrenos del patrono y sí en la vía pública por lo que se trata de un riesgo corriente y ordinario de la calle en que no existen factores que ameriten considerar el mismo como una excepción.

No conforme, recurrió el peticionario ante nos y en apoyo de su recurso apunta que la resolución de la Comisión no está sostenida por la prueba y que la Comisión incidió "al resolver que se trata aquí de un caso no protegido por la Ley de Compensaciones del Trabajo . . . en ausencia de prueba de que el accidente no ocurrió con motivo del trabajo ni debido a un riesgo inherente al mismo."

Concluimos que la reclamación del peticionario no tiene fundamento en derecho y por lo tanto no puede prosperar.

■ Por la regla general, conocida como "de ir y venir del trabajo" se entiende que aquellos accidentes que le ocurran al obrero mientras va de su casa al trabajo y del trabajo a su casa no son compensables. *Atiles, Admor.* v. *Comisión Industrial*, 72 D.P.R. 417 (1951). Pero esta regla tiene sus excepciones. *Gallart, Admor.* v. *Comisión Industrial*, 87 D.P.R. 17 (1962). No hubo prueba en este caso al efecto de que la naturaleza del trabajo del peticionario requiriese su presencia en la calle y por lo tanto lo expusiese a "los riesgos de la calle" ni que, como en *Gallart,* supra, el patrono al proveerle transportación hacia su hogar, lo hiciese en tal forma que lo expusiese a un riesgo peculiar y no común al público en general.

En *Atiles, Admor.* v. *Comisión Industrial, y Sucn. Álvarez*, 73 D.P.R. 15 (1952); *Atiles, Admor.* v. *Comisión Industrial y Sucn. González*, 69 D.P.R. 951 (1949), y *Cordero, Admor.* v. *Comisión Industrial*, 61 D.P.R. 43 (1942), confirmamos las compensaciones concedidas a obreros lesionados. En el primer caso el accidente ocurrió mientras el obrero re-

gresaba al trabajo luego de almorzar, "en la puerta de entrada del almacén en que trabajaba." En el segundo, el obrero fue lesionado al regresar del trabajo por un trayecto de carretera dentro de la propiedad del patrono y que era la única vía para ir a y venir de su trabajo. En el tercero, el obrero fue lesionado al ser arrollado por un automóvil después de haber dicho automóvil chocado con otro en la carretera pública Núm. 52, entre Toa Baja y Bayamón; en ese momento el obrero estaba esperando que llegase la hora de comenzar el trabajo y estaba con otros "parados en la parte de afuera de la brea y en un camino de la finca de la Sucesión Fonalledas [el patrono] que se une a la carretera embreada núm. 52." Como en el caso que nos ocupa el accidente ocurrió en la vía pública como a 35 pies del portón de entrada al establecimiento del patrono, la doctrina que invocamos en estos dos casos conocida como la regla "en la propiedad del patrono", no es de aplicación al caso que nos ocupa.

Pero en la mayoría de las jurisdicciones se ha extendido la regla "en la propiedad del patrono" mediante la "regla de proximidad" para hacer compensable las lesiones sufridas por un obrero en un accidente ocurrídole en la proximidad de la propiedad del patrono cuando la ruta a seguir es la única disponible o una conveniente, que expone al obrero a riesgos especiales, como, por ejemplo, un cruce de ferrocarril. La situación debe ser tal que el empleado quede expuesto en la proximidad del negocio (1) a riesgos asociados peculiarmente con su empleo y no a riesgos comunes del vecindario o (2) a riesgos a que el público en general no está expuesto o (3) a riesgos mayores que aquéllos a que el público en general está expuesto, o (4) a situaciones atribuibles al patrono como lo son el situar el parque de estacionamiento de los vehículos de los empleados al otro lado de una avenida de mucho tránsito la cual había que cruzar para entrar al o salir del trabajo, o el uso frecuente de un parque de estacionamiento particu-

lar, situado al lado opuesto de una vía de mucho tránsito, cuando el del patrono, junto a la fábrica estaba lleno, situación conocida por éste, o la falta de conservación por el patrono, según contrato al efecto, de una acera contigua a su establecimiento en la que se cayó la obrera por estar cubierta de hielo. *Kelty* v. *Travelers Insurance Company*, 391 S.W.2d 558 (Tex. App. 1965); *Bountiful Brick Co.* v. *Giles*, 276 U.S. 154 (1928); *Cudahy Co.* v. *Parramore*, 263 U.S. 418 (1923); *Sola* v. *Sunny Slope Farms*, 135 S.E.2d 321 (S.C. 1964); *McField* v. *Lincoln Hotel*, 182 N.E.2d 905 (Ill. App. 1962); *Montgomery* v. *State Industrial Accident Com'n.*, 356 P.2d 524 (Ore. 1960); *Jaynes* v. *Potlatch Forests*, 271 P.2d 1016 (Idaho 1954); *Lewis* v. *Walter Scott & Co., Inc.*, 137 A.2d 109 (N.J. Cty. Ct. 1957); Larson's *Workmen's Compensation Law*, vol. 1, sec. 15, págs. 195 y siguientes.

■ La prueba demuestra que en este caso en el lugar del accidente (1) no existía un riesgo peculiar del empleo o (2) uno a que el público en general no estuviese expuesto o (3) uno que fuese mayor que al que se expone el público en general, o (4) que el accidente se debiese a una situación atribuible al patrono. El accidente ocurrió simplemente porque el conductor en la proximidad de la entrada del establecimiento del patrono no conducía su automóvil con la debida pericia o el debido cuidado.

En *Fenton* v. *Margate Bridge Co.*, 94 A.2d 848 (N.J. App. 1953) ocurrió una situación muy parecida a la del caso de autos. Se trataba de un empleado de una empresa que operaba un puente de tránsito de vehículos de motor. Cobraba la tarifa impuesta por el uso de la carretera que se extendía sobre el puente. El empleado se lesionó al perder el dominio de su automóvil en una curva cerrada de la carretera, cerca del puente, y tropezó con un poste en la colindancia de la propiedad de su patrono. El tribunal concluyó que el empleado así lesionado no estaba sujeto a un riesgo mayor en el uso

diario de la carretera que el público en general, y por lo tanto, sus lesiones no surgieron mientras el obrero estaba en su trabajo o en el curso del mismo. Véanse, además, *Verret* v. *Travelers Insurance Company*, 166 So.2d 292 (La. App. 1964); *Bronson* v. *Joyner's Silver & Electroplating, Inc.*, 127 N.W.2d 678 (Minn. 1964); *Peters* v. *Bristol Manufacturing Corporation*, 179 A.2d 853 (R.I. 1962).

■ La regla "del bienestar personal" a que hicimos referencia en *Candelaria* v. *Comisión Industrial*, 85 D.P.R. 20 (1962) no es de aplicación en este caso pues la prueba no demostró que el recurrente, cuando se lesionó, se encontraba fuera del establecimiento durante un período de descanso provisto para su conveniencia personal, como parte de su contrato de trabajo y por el cual se le compensaba. En ese momento el recurrente regresaba al trabajo luego de almorzar, y, como se dijo en *Van Roy* v. *Industrial Comm.*, 92 N.W.2d 818 (Wis. 1958), no se compensa a un empleado que se lesiona al ir a, o venir de, su trabajo durante un período de almuerzo porque la lesión no ha ocurrido durante las horas de su empleo. En adición a los casos citados en *Candelaria*, supra, con respecto al alcance de la regla "del bienestar personal" véanse *Horvath* v. *Industrial Commission*, 131 N.W.2d 876 (Wis. 1965); *Pickrel* v. *Martin Beach, Inc.*, 124 N.W.2d 182 (S.D. 1963); *Whitehurst* v. *Rainbo Baking Company*, 374 P.2d 849 (N.M. 1962).

*Por las razones expuestas, se confirmará el dictamen de la Comisión Industrial en este caso.*