En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| GENOVEVA CATALA MELENDEZ<br>　　Apelante<br><br>　　V.<br><br>PEDRO SOTO RIOS, ADMINISTRADOR DEL<br>FONDO DEL SEGURO DEL ESTADO<br><br>　　Apelado | Apelación<br><br>99TSPR56 |

Número del Caso: AA-95-107

Abogados de la Parte Apelante: Lcdo. Andrés Cruz
González
(Bufete Ortiz Ubiñas & Aldarondo Delgado)

Abogados de la Parte Apelada: Ldca. María I. Pagán
Páres

Abogados de la Parte Interventora:

Agencia Administrativa: Comisión Industrial

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/14/1999

Materia:

Este documento constituye un documento
oficial del Tribunal Supremo que está
sujeto a los cambios y correciones del
proceso de compilación y publicación
oficial de las decisiones del Tribunal. Su
distribución electrónica se hace como un
servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Genoveva Cátala Meléndez

    Apelante

AA-95-107   Apelación

      v.

Pedro Soto Ríos, Administrador
del Fondo del Seguro del
Estado

    Apelado

Opinión del Tribunal emitida por el Juez Presidente señor Andréu García

San Juan, Puerto Rico a 14 de abril de 1999

I.

La señora Genoveva Cátala Meléndez ha laborado en la Lotería de Puerto Rico (Departamento de Hacienda) en calidad de oficinista de lotería II por espacio de quince (15) años, específicamente en la oficina de preparación y distribución de billetes de lotería. En diciembre de 1991, un oficial del Departamento de Hacienda le notificó que había sido destituida de su empleo debido a que no había rendido las planillas de contribución sobre ingresos correspondientes a los años de 1987, 1988 y 1989[1]. En la carta en la que se le

_____

[1]. Eventualmente, la señora Cátala

Meléndez aceptó que no rindió las
planillas de contribución sobre
ingresos en los referidos años.

notificó su destitución se le informó, además, que tenía derecho a solicitar una vista administrativa para dilucidar las imputaciones hechas en su contra. Apéndice de la Petición de Revisión, en la pág. 5; Exhibit 5. La señora Cátala Meléndez alega que permaneció destituida por espacio de una semana, al cabo de la cual fue restituida a su puesto, ya que el Departamento de Hacienda le reconoció su derecho a una vista administrativa previa a su destitución.[2]

En mayo de 1992, el Departamento de Hacienda le notificó nuevamente a Cátala Meléndez que se le destituía de su puesto. Además, el Departamento le informó que fue citada a una vista administrativa a la cual no compareció. Surge del expediente que luego de remitir esta misiva, el Departamento de Hacienda aceptó las excusas de la señora Cátala Meléndez en cuanto a su incomparecencia a la vista administrativa y la citó a una nueva vista.

Celebrada la misma, el Departamento de Hacienda estimó probadas las imputaciones en contra de la señora Cátala Meléndez. Sin embargo, en lugar de destituirla permanente, el Departamento optó por suspenderla de empleo y sueldo por 11 meses. Al finalizar este término, la señora Cátala Meléndez, alega que no pudo reanudar sus labores en la Lotería

---

[2]. Conforme surge del expediente, la señora Cátala Meléndez solicitó mediante carta una vista administrativa tan pronto le fue notificada su destitución. Sin embargo, el Departamento de Hacienda aduce que no recibió la comunicación. Ante las alegaciones de la señora Cátala Meléndez, el Departamento optó por reinstalarla en su puesto en lo que se dilucidaban los cargos en una vista administrativa.

de Puerto Rico por habérsele agravado una condición nerviosa que padecía.[3]

Así las cosas, el 10 de agosto de 1992 la señora Cátala Meléndez acudió a las oficinas del Fondo del Seguro del Estado para solicitar tratamiento psiquiátrico. En esa ocasión alegó que, debido a "sucesivas destituciones en su lugar de trabajo sin haberle permitido cuestionar las mismas, se le ha agravado su condición emocional". Apéndice, en la pág. 1.

El 20 de octubre de 1992, el Fondo del Seguro del Estado emitió una resolución mediante la cual denegó los beneficios solicitados. Resolvió que la condición emocional que padecía la señora Cátala Meléndez no guardaba relación causal con las funciones de su puesto.

Inconforme con esta determinación, Cátala Meléndez acudió ante la Comisión Industrial. Dicho foro apelativo administrativo la refirió a la Dra. Alina Vale, psiquiatra consultor de la Comisión Industrial, para que le efectuara una evaluación psiquiátrica y rindiera un informe. Eventualmente, se celebró una vista administrativa ante un Oficial Examinador el cual, en su informe, recomendó confirmar la decisión del Fondo del Seguro del Estado y el archivo definitivo del caso. La Comisión Industrial actuó de conformidad con esa recomendación. Una moción de reconsideración fue acogida y declarada no

---

[3]. Surge del expediente que en la actualidad la señora Cátala Meléndez se encuentra laborando en el mismo puesto en el Departamento de Hacienda. Informe del Oficial Examinador de la Comisión Industrial, en la pág. 3; Apéndice, en la pág. 16.

ha lugar por ese foro administrativo. Eventualmente, Cátala Meléndez acudió ante este Tribunal.[4]

En su único señalamiento de error plantea que la Comisión Industrial erró al denegarle los beneficios de la Ley de Compensaciones por Accidentes del Trabajo. Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. secs. 1 et seq. Sostiene que "fue unánime la opinión pericial de los psiquiatras que prestaron testimonio en la vista pública" en términos de que "la condición emocional que padece [...] guarda relación causal con las sucesivas destituciones de que ésta fue víctima por parte de su patrono". Alegato de la Apelante, en la pág. 7. Por ello, nos invita a que resolvamos que "[e]l manejo altamente irregular por parte del patrono, provocando destituciones sucesivas contra la obrera-[apelante] constituye un accidente laboral genuino protegido bajo la Ley de Compensaciones". Alegato de la apelante, en la pág. 8.

Como puede apreciarse, las alegaciones de la señora Cátala Meléndez en cuanto a la compensabilidad de la lesión que ha sufrido se fundamentan en que el proceso que culminó en su suspensión temporal de empleo y sueldo le produjeron una lesión incapacitante que la hace acreedora a los beneficios de la Ley de

_____

[4]. Aunque, Cátala Meléndez tituló su escrito como recurso de revisión, se trata de un recurso de apelación, ya que fue presentado ante nos bajo la vigencia de la disposición de la Ley de la Judicatura que disponía que este Foro revisaría mediante apelación las decisiones finales de la Comisión Industrial. Art. 3002(d), Plan de Reorganización de la Rama Judicial, Núm. 1, 28 de julio de 1994. Véase, Farmacias Moscoso, Inc. v. K. Mart Corp., Opinión y Sentencia de 5 de octubre de 1995; 138 D.P.R. ___ (1995).

Compensaciones. Por tanto, de entrada debemos resolver si una lesión emocional originada como consecuencia de un procedimiento disciplinario administrativo <u>bona fide</u> constituye una lesión compensable bajo la Ley de Compensaciones por Accidentes del Trabajo.


II.

La Ley de Compensaciones por Accidentes del Trabajo, <u>supra</u>, [en adelante Ley de Compensaciones] es un estatuto de naturaleza remedial que pretende brindar al obrero ciertas protecciones y beneficios en el contexto de accidentes ocurridos en el escenario de trabajo. Con este fin, establece un esquema de seguro compulsorio cuya finalidad es "proveerle a los obreros que sufren alguna lesión o enfermedad que ocurra en el curso del trabajo y como consecuencia del mismo, un remedio rápido y eficiente libre de las complejidades de una reclamación ordinaria en daños". <u>Pacheco Pietri y otros</u> v. <u>E.L.A. y otros</u>, Opinión y Sentencia de 30 de junio de 1993, 133 D.P.R. ___ (1993); <u>véase</u>, <u>Segarra Hernández</u> v. <u>Royal Bank</u>, Opinión y Sentencia de 1 de abril de 1998, 145 D.P.R ___ (1998). En este sentido, la Ley de Compensaciones "cubre los casos de incapacidad transitoria, incapacidad parcial permanente e incapacidad total permanente. Además, [...] provee beneficios de asistencia médica y medicinas, dirigidos a lograr la rehabilitación de los obreros accidentados o afectados en el transcurso del empleo". Alberto Acevedo Colom, <u>Legislación protectora del trabajo comentada</u> 409 (5ta ed. 1997).

A cambio de estos beneficios, el patrono asegurado adquiere inmunidad absoluta contra cualquier reclamación relacionada a la lesión originada en el empleo y como consecuencia de éste, independientemente del grado de negligencia que se le pueda atribuir. Segarra Hernández v. Royal Bank, supra.

Conforme al Art. 2 de la Ley de Compensaciones, sus beneficios están disponibles para:

> todos los obreros y empleados que trabajen para los patronos a quienes se refiere el párrafo siguiente, que sufran lesiones o se inutilicen o que pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo y que ocurran en el curso de éste, y como consecuencia del mismo o por enfermedades o muertes derivadas de la ocupación, [...]. 11 L.P.R.A. sec. 2.

A la luz de esta disposición estatutaria, hemos destacado que para que un obrero o empleado pueda reclamar con éxito los beneficios que concede la Ley, es preciso que el accidente que origina la solicitud de los beneficios satisfaga los siguientes tres requisitos: (1) provenga de cualquier acto o función del obrero; (2) que sea inherente al trabajo o empleo del obrero; y (3) que ocurra en el curso de éste. Administrador del Fondo del Seguro del Estado v. Comisión Industrial, 101 D.P.R. 56, 58 (1973); véase además, Candelaria v. Comisión Industrial, 85 D.P.R. 20 (1962). Claro está, un accidente que reúna estos requisitos sólo será compensable bajo la Ley de Compensaciones si el accidente le produce al empleado u obrero una lesión que lo incapacita para trabajar.

Ahora bien, la Ley de Compensaciones pretende proveer compensación ante la incapacidad sufrida por un obrero o empleado que se accidenta realizando

funciones inherentes a su trabajo. Es decir, el requisito de que el accidente ocurra como consecuencia de ejecutar una "función inherente al empleo" significa que, la lesión ocurra mientras el empleado u obrero realiza las labores normales de su puesto.

La prueba no revela que la condición de la señora Cátala Meléndez se haya agravado como consecuencia de los quehaceres inherentes a su puesto de oficinista de lotería II. La prueba pericial revela que su condición emocional se agravó exclusivamente como consecuencia de los trámites disciplinarios administrativos que el Departamento de Hacienda siguió en su contra ante los cargos imputados. Ello surge del testimonio pericial que destaca que "[l]a situación laboral de la lesionada de, no de una, sino de tres destituciones de empleo, explica la condición emocional que padece la lesionada". Informe del Oficial Examinador, en la pág. 8; Apéndice, en la pág. 21. Además, la propia señora Cátala Meléndez lo reconoce cuando en su recurso nos afirma que "[e]l manejo altamente irregular por parte del patrono, provocando destituciones sucesivas contra la obrera-[apelante] constituye un accidente laboral genuino protegido bajo la Ley de Compensaciones". Alegato de la Apelante, en la pág. 8. Bajo los hechos del presente caso, lo anterior excluye la relación causal necesaria entre la lesión y el desempeño de las funciones inherentes al cargo de Cátala Meléndez.

Los procedimientos disciplinarios administrativos iniciados contra obreros o empleados tienen como objetivo velar por el cumplimiento de las normas establecidas dentro de los centros de trabajo.

Responder a citaciones o a requerimientos de un patrono dentro de un proceso disciplinario bona fide no es una función inherente al empleo para los propósitos de la Ley de Compensaciones. Aunque se da en el contexto de una relación laboral, constituye una situación extraordinaria, ajena al normal desempeño de las funciones de un puesto en una empresa o negocio. Por lo tanto, una condición emocional que surja o se agrave exclusivamente como consecuencia de recibir citaciones, notificaciones de decisiones administrativas, o por otras gestiones propias de este tipo de procedimientos, como ocurrió en el presente caso según la prueba pericial aportada, no constituye una lesión compensable bajo dicho estatuto.

Las alegaciones de la señora Cátala Meléndez están más próximas a una reclamación por concepto de daños y perjuicios por un alegado trámite negligente del proceso administrativo que a una reclamación por un accidente ocupacional. La cubierta de la Ley de Compensaciones no tiene ese alcance. Como hemos destacado en el pasado, "[l]a Ley de Compensaciones [...] no establece un seguro para indemnizar por daños. Establece un seguro de carácter remedial para compensar, en la medida limitada establecida por la propia ley, la incapacidad productiva que sobreviene a un obrero como consecuencia de un accidente o enfermedad ocupacional". Morell v. Fondo del Seguro del Estado, 110 D.P.R. en las págs. 712-13; véase, Villanueva Pérez v. Comisión Industrial, 109 D.P.R. 790 (1980).

En la medida en que nos encontramos ante una lesión fuera del alcance de la cubierta de la Ley de

Compensaciones por no guardar relación causal con las labores inherentes al puesto ocupado por Cátala Meléndez, no opera la exclusividad del remedio de la Ley ni la inmunidad patronal.[5] El Fondo del Seguro del Estado, por lo tanto, no es el foro apropiado para dilucidar las alegaciones de la señora Cátala Meléndez.

En vista de ello, procede confirmar la determinación de la Comisión Industrial, mediante la cual se resolvió que la condición emocional que padece la señora Cátala Meléndez no es compensable bajo la Ley de Compensaciones.

Se emitirá la correspondiente sentencia confirmatoria.

José A. Andréu García
Juez Presidente

---

[5] Véase, Segarra Hernández v. Royal Bank, supra, (en donde afirmamos que "[p]ara decidir si un patrono está cubierto por la inmunidad que confiere la Ley sólo es necesario determinar si el obrero ha sufrido un accidente dentro del ámbito de la cubierta de la Ley").

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Genoveva Cátala Meléndez

    Apelante

       v.

                   AA-95-107   Apelación

Pedro Soto Ríos, Administrador
del Fondo del Seguro del
Estado

    Apelado

SENTENCIA

San Juan, Puerto Rico a 14 de abril de 1999

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente sentencia, se confirma la Resolución de la Comisión Industrial emitida en el caso de epígrafe. Se ordena el archivo definitivo del caso.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Fuster Berlingeri disienten sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo